[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Wannetta Hill and Christopher Orr appeal from a judgment terminating their parental rights with respect to their children, Michalin Hill, Keyria Orr and Brandon Orr, and awarding permanent custody to the Clark County Department of Human Services (CCDHS). Hill and Orr contend that the trial court erred in finding that the children could not be placed with them within a reasonable time. They also contend that the trial court erred by failing to grant permanent custody in favor of the paternal grandparents rather than CCDHS.
We conclude that the record reveals clear and convincing evidence to support the trial court's determination that the children could not be returned to the parents within a reasonable time. We further find that the trial court did not err by failing to give permanent custody to the paternal grandparents.
Accordingly, the judgment of the trial court is Affirmed.
 I
Michalin Hill was born on June 14, 1992 to Wannetta Hill and Richard Bowser.[1] Keyria Orr was born on December 15, 1994 to Wannetta Hill and Christopher Orr. In October, 1996, CCDHS filed an emergency shelter care petition seeking temporary custody of the children based on allegations that they were homeless. The trial court granted the petition on October 17, 1996, and the children were placed in foster care. Thereafter, Brandon Orr was born on January 24, 1997. CCDHS sought, and was granted, temporary custody of Brandon on January 27, 1997.
A parental reunification case plan was filed with the court. The case plan required Orr and Hill to find housing, undergo a drug/alcohol assessment, and maintain regular visitation with the children. Hill was also required to undergo a mental health assessment. The plan was later amended to include a requirement that Orr and Hill attend parenting classes.
The record indicates that Orr and Hill moved to Cincinnati in March, 1997. In April, 1997, the children were placed in the temporary custody of Christopher Orr's parents. CCDHS later met with the grandparents to discuss relinquishing permanent custody of the children to the grandparents. After that meeting, in September, 1997, CCDHS filed a motion seeking to have permanent custody awarded to the agency. The children were removed from the care of the grandparents on October 10, 1997, and were again placed in foster care. A trial was held on January 29 and 30, 1998. The court granted permanent custody in favor of CCDHS. Orr and Hill filed timely appeals from that judgment.
 II
The First and Third Assignments of Error are as follows:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT IT HAD BEEN SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT (OR SHOULD NOT) BE PLACED WITH EITHER PARENT WITHIN A REASONABLE PERIOD OF TIME.
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED PERMANENT CUSTODY OF THE CHILDREN TO THE CLARK COUNTY DEPARTMENT OF HUMAN SERVICES WHEN THE PARENTS HAD SUBSTANTIALLY COMPLIED WITH THE CASE PLAN.
Orr and Hill contend that the trial court erred by finding, based upon their failure to complete the case plan prepared by CCDHS, that the children could not be placed with them within a reasonable time. In support, they claim that the evidence reveals that they had substantially complied with the case plan. They also argue, somewhat inconsistently, that they could comply with the requirements of the case plan if given more time to do so. They contend that pursuant to R.C. 2151.353, "a public children's services agency can maintain temporary custody of a child up until two years has past [sic] from the date of the original filing," and thus, they are entitled to "a full year [ ] under Statutory Law in which [to prove] their ability to parent."
A decision in a permanent custody determination must be supported by clear and convincing evidence. In re Meyer (1994),98 Ohio App.3d 189, 195. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In reWeaver (1992), 79 Ohio App.3d 59, 64. A reviewing court "must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
In determining whether a child cannot be placed with either of its parents within a reasonable period of time, or should not be placed with his parents, R.C. 2151.414(E) provides that "the court shall consider all relevant evidence," and "if the court determines, by clear and convincing evidence * * * that one or more of [twelve factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."
In this case, the trial court found that Orr and Hill had both failed to complete and fulfill the requirements of the case plan and to remedy the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1). The trial court further found that Orr and Hill had a long-standing use of, and dependence upon, drugs, making them unable to "provide an adequate permanent home" for the children within a year from the hearing date. R.C. 2151.414(E)(2). The court also found that Orr and Hill have "demonstrated a lack of commitment toward" the children based upon their failure to provide financial support or to maintain regular visitation and communication with the children. R.C. 2151.414(E)(4). Additionally, the trial court found that Orr and Hill showed an unwillingness to provide for the basic needs of the children based upon their failure to maintain a safe home with proper furnishings, sufficient food and minimal cleanliness. R.C. 2151.414(E)(9).
Hill and Orr contend that they did in fact substantially complete the case plan. Although they admitted at the hearing that they had failed to obtain housing, they testified that Orr's parents were willing to allow the family to live with them in their house. In fact, at the time of the hearing, Orr and Hill had been staying at Orr's parents' house for approximately one week. Therefore, it can be argued that Orr and Hill did obtain suitable housing by the time of the hearing.
During her testimony, Hill admitted that she had not completed a drug/alcohol assessment. She later contradicted herself, and testified that she had undergone an assessment while living in Cincinnati; but she failed to provide any evidence to corroborate this claim.[2]
Hill and Orr both contend that they received substance abuse counseling; and the record does indicate that Orr and Hill attended some counseling sessions with a counselor in Cincinnati. However, even though the counselor testified, the nature of his services is not clear. In any event, the counselor testified that Orr failed to complete the "goal," or objective, by failing to keep seeing him. The counselor also testified that he had no documentation to indicate that Orr had ever attended any of the substance programs to which he was referred. More importantly, he did not testify that either Hill or Orr had completed a drug assessment as required by the case plan. Thus, the record supports a finding that Orr and Hill failed to obtain a drug assessment.
Both Orr and Hill admitted to drug abuse. In fact, Hill tested positive for crack cocaine and marijuana during Brandon Orr's delivery. Hill testified that she last used drugs in March, 1997, and Orr testified that he had last used drugs in May, 1997. During the hearing, they both admitted that the GAL had requested them to submit to, and provide the results of, a drug screen. They both testified that they had done so, and that the screens were negative for drugs. However, they failed to provide documentation to support these claims.
Hill also contends that she completed the mental health assessment required by the plan. The counselor in Cincinnati did testify that he referred Hill to an agency for a mental health assessment at the Community Health Board. He also testified that Hill showed up for her first interview. He did not state whether Hill had completed the assessment. Hill testified that she had met with a case worker at the Community Health Board, and that the worker was going to "recommend" her to a mental health board and evaluate her, but that she failed to return there because she was working. Again, Hill failed to submit any corroborating evidence to show completion of an assessment.
Hill and Orr next claim that they maintained regular visitation with the children while the children were in the care of the CCDHS. The record shows that CCDHS took temporary custody of the children in October 1996, and that the parents did maintain regular visitation [they attended sixteen out of twenty scheduled visits] until March 28, 1997. The children were then placed with Orr's parents for six months. Both of Orr's parents testified that during those six months Orr and Hill only visited the children three or four times. After the children were removed from the grandparents' house, Orr and Hill failed to appear for scheduled visitations in November and December of 1997. However, they testified that they had visited with the children on January 24, 1998. Therefore, the record shows that in the ten months preceding the final hearing, Orr and Hill visited the children a maximum of five times.
Finally, we note that the case plan also required Orr and Hill to complete parenting classes. Both admit that they failed to do so.
However, Orr and Hill argue that they could have, if given more time, complied with their case plan. Orr and Hill have not cited, nor can we find, any statutory mandate requiring the trial court to afford the parents more time in which to comply with their case plan or to remedy the situation that necessitated the removal of the children. Although at the time of the hearing, both Orr and Hill testified that they were willing to do anything necessary to retain custody of their children, the record shows that they had not completed the case plan because they had failed to: (1) attend parenting classes; (2) complete drug/alcohol assessments; and (3) maintain regular visitation with the children. Also, Hill had failed to complete a mental health assessment. Therefore, the only goal in the case plan that they arguably met was to obtain housing. Furthermore, there was no indication that they were trying to complete the case plan. They both testified that they did not believe they needed parenting classes, and Hill testified that she did not feel that she needed to have a mental health assessment. They were both unemployed at the time of the hearing.
Orr and Hill cite this court's decision in In the Matter ofCalvin and Tonya Beal (Oct. 5, 1992), Clark App. No. 2903, unreported, as support for their claim that the trial court should not have given permanent custody to CCDHS.[3] They contend that the facts in Beal, wherein we found that the trial court erred by granting custody to CCDHS, are "much more serious" than the facts in this case. Therefore, they argue that we should reverse the trial court in this case in order to maintain consistency and fairness.
We disagree. In Beal, the children of Katherine and Arthur Beal were removed from their home by CCDHS. Id. A reunification case plan was initiated. Id. CCDHS filed a petition for permanent custody, which was granted by the trial court on the basis of the failure of the parents to comply with the plan. Id. Upon review, we found that the record clearly supported a finding that Arthur Beal failed to comply with the case plan. Id. However, we also found, as admitted by the trial court, that Katherine Beal had made "substantial efforts" to comply with the case plan. Id.
Therefore, we held that "merely because one parent fails to participate in the reunification plan does not automatically mean the failure of both." Id. Our reversal of the trial court's judgment was based upon our finding that its decision was not supported by clear and convincing evidence. The facts in this case are distinguishable; neither Orr nor Hill complied with the case plan.
Absent a statutory requirement that the trial court allow the parents more time in which to remedy the situation we cannot say that the trial court abused its discretion in failing to permit additional time. Moreover, the parents consistently failed during the preceding fourteen months to remedy the situation necessitating the removal of the children; they also failed to show any progress in doing so as of the date of the hearing. Therefore, we cannot say that the trial court erred by terminating the parental rights of Orr and Hill to their children.
Accordingly, the First and Third Assignments of Error are overruled.
 III
The Second Assignment of Error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO CONSIDER ALL ALTERNATIVES PRESCRIBED BY STATUTE BEFORE GRANTING PERMANENT CUSTODY OF THE CHILDREN TO THE CLARK COUNTY DEPARTMENT OF HUMAN SERVICES.
Orr and Hill contend that the trial court failed to consider appropriate statutory alternatives prior to granting custody to CCDHS. In support, they argue that the trial court could have extended the term of temporary custody in order to provide the parents with more time to gain custody. They also argue that the court could have awarded custody to the paternal grandparents or the maternal grandmother.
We first note, as stated in Part II, above, that based upon the evidence before it, the trial court did not abuse its discretion by refusing to extend temporary custody. We also note that there is no evidence in the record to indicate that the maternal grandmother sought, or even desired, custody of the children.
We next turn to the issue of whether the trial court erred by failing to grant permanent custody of the children to the paternal grandparents. The record reveals that CCDHS was prepared to relinquish permanent custody to the grandparents. However, the record shows that when two CCDHS employees, Teresa Kiley and Kim Dysert, met with the Orrs to discuss giving them custody, the Orrs indicated that they did not want custody. Kiley indicated that the Orrs had discussed their age and some health problems. Kiley also testified that she explained to the Orrs that the agency would seek to place the children for adoption if the grandparents did not take them. Kiley also testified that after the removal of the children from their home, the grandparents did not attempt to regain, or ask to be considered for, custody. Dysert testified that the Orrs stated that they did not want custody.
At the hearing, the grandparents testified that they would be willing to take care of the children. Mrs. Orr testified that she was not physically able to care for the children; she then contradicted herself and testified that she was capable. She also testified that they had not sought custody of the children after they were removed from her home. Based upon the testimony, the trial court found that the paternal grandparents, after trying to care for the children, had chosen not to raise the children. We find that the trial court could have reasonably inferred from the testimony, and from the failure of the grandparents to petition for custody, that they did not want permanent custody of the children. Thus, we cannot say that the trial court's decision is erroneous.
Accordingly, the Second Assignment of Error is overruled.
 IV
All of the Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and WOLFF, J., concur.
Copies mailed to:
Roger A. Ward
Gregory K. Lind
Hon. Joseph N. Monnin
[1] Mr. Bowser was properly summoned before the court, but failed to enter an appearance. He is not a party to this appeal.
[2] The record reveals a letter from a drug and alcohol counselor located in Cincinnati. The letter indicates that Hill did enroll in a treatment program, but that she only attended one meeting, and failed to complete the program. The letter does not indicate that a drug assessment was performed.
[3] We note that Orr and Hill have failed to comply with Loc.R. 9 by neglecting to attach a copy of this unreported decision to their appellate brief. Counsel is hereby admonished to comply with the Local Appellate Rules in future filings with this court.